UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| JENNIFER L. BROWN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:03-cv-1740 RLY/TAB |
| | ) | |
| DANVILLE COMMUNITY SCHOOL | ) | |
| CORPORATION; TIMOTHY | ) | |
| ANDERSON, individually and in his | ) | |
| capacity as an employee of the Danville | ) | |
| Community School Corporation; and | ) | |
| INDIANA TESTING, INC., | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANT DANVILLE COMMUNITY SCHOOL
CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND ON
DEFENDANT TIMOTHY ANDERSON'S MOTION FOR SUMMARY
JUDGMENT**

In May 2004, Plaintiff Jennifer Brown filed her Amended Complaint against

Defendants Danville Community School Corporation ("DCSC"), Timothy Anderson, and

Indiana Testing, Inc.  The thirteen-count Amended Complaint alleges, inter alia, sexual

harassment, retaliation, and constructive discharge.  The claims against Indiana Testing,

Inc. were dismissed on January 5, 2006.  The matter is now before the court on DCSC's

Motion for Summary Judgment and on Timothy Anderson's Motion for Summary

Judgment.  For the following reasons DCSC's and Anderson's Motions for Summary

Judgment are **granted**.

1

## I.      Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine "only when a reasonable jury could find for the party opposing the motion based on the record as a whole."  *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

When deciding whether a genuine issue of material fact exists, the court must "draw all inferences in the light most favorable to the non-movant.  But in so doing, we draw only reasonable inferences, not every conceivable inference."  *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987) (internal citation omitted).  The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial.  *Celotex*, 477 U.S. at 322.  In accordance with this standard, the following facts are considered in the light most favorable to Brown.

## II.      Background

Brown was employed by DCSC as a school bus driver from September 1999 until her resignation on May 10, 2002.  (Am. Complaint ¶ 15; Ex. 3 at 24-26 (Docket #107)).

Brown's immediate supervisor at DCSC was Defendant Timothy Anderson.  (Brown Dep. at 11).  Anderson's supervisor was Denny Leathers.  (Am. Complaint ¶ 23).  The parties dispute whether Anderson had the authority to hire or fire bus drivers.  (Anderson Memorandum in Support of Summary Judgment at 2).

During the term of her 2001 contract, DCSC did not provide Brown with a copy of any sexual harassment policy promulgated by DCSC, nor did DCSC hold any sexual harassment training programs for school bus drivers or for Brown's supervisors.  (Am. Complaint ¶¶ 18-20).

Brown alleges that on a Friday in mid-December 2001, Anderson grabbed her and began kissing her against her wishes.  (Am. Complaint ¶ 32; Brown Dep. at 72-73).  Brown told Anderson that she was not interested in a sexual relationship with him; she attempted to leave the situation, but Anderson slammed the door shut and exposed himself to her.  (Am. Complaint ¶ 32).  Following this incident, Brown attempted suicide.  (Am. Complaint ¶ 33).

Brown further alleges that toward the end of December 2001, Anderson asked Brown to come to his apartment, which she did.  Anderson again touched Brown in an unwanted manner.  (Brown Dep. at 81-84).  Following the December incidents, Brown adjusted her work schedule to avoid Anderson.  (Am. Complaint ¶¶ 35-36).  Anderson denies that these two incidents took place (Anderson Dep. at 166-67), and Brown maintains that she told nobody about these incidents.  (Brown Dep. at 76, 85, 166).

On or about May 7, 2002, while driving her bus, Brown was involved in an

3

accident with a passenger car.  (Am. Complaint ¶ 40).  Following the accident, Brown submitted to a drug and alcohol test conducted by Indiana Testing, Inc.  (Am. Complaint ¶ 41).  The specimen collected by Indiana Testing, Inc. was insufficient to perform a split test, as required by Department of Transportation regulations; nonetheless, the specimen was sent to MedTox Laboratories for analysis.  (Am. Complaint ¶ 42-46).  Later that day, Brown was informed that she was being placed on paid leave pending the results of the drug test.  (Anderson Dep. at 160).

Brown requested permission to participate in DCSC's drug and alcohol rehabilitation program, which other bus drivers had been allowed to participate in, but her request was refused.  (Am. Complaint ¶ 47-49).  DCSC, through Anderson, requested Brown's resignation.  (Am. Complaint ¶ 50).  DCSC did not offer or provide a pre-termination hearing to Brown.  (Am. Complaint ¶ 51).  Brown submitted her resignation on May 10, 2002, and on May 14, 2002, Anderson recommended to DCSC's Assistant Superintendent that the resignation be accepted.  (Am. Complaint ¶ 52-53).  On May 14, 2002, MedTox reported to Indiana Testing, Inc. that Brown's drug test was positive for marijuana, morphine, and codeine.  (Brown Dep. at 31-32; Ex. 3 at 21-22 (Docket #107)).  On June 10, 2002, the DCSC Board of Trustees accepted Brown's resignation.


III.    **Analysis**

Brown's Amended Complaint consists of the following counts: (I) Sexual Harassment; (II) Retaliation; (III) Sexual Discrimination; (IV) Constructive Discharge;

(V) Section 1983; (VI) Violation of Procedural Due Process Under the Fourteenth

Amendment; (VII)(A) Violation of Substantive Due Process Under the Fourth and/or

Fourteenth Amendment; (VII)(B) State Constitutional Invasion of Privacy; (VIII)

Negligent Infliction of Emotional Distress; (IX) Intentional Infliction of Emotional

Distress; (X) Breach of Contract.[1]   DCSC is named as a Defendant for each of Counts I-

X; Anderson is only named as a Defendant for Counts II, V, VII(A), VIII, and IX

(retaliation, Section 1983, violation of substantive due process under the Fourth and/or

Fourteenth Amendment, negligent infliction of emotional distress, and intentional

infliction of emotional distress).

DCSC and Anderson filed their Motions for Summary Judgment separately, but

Brown filed a joint Response.[2]  In the interest of judicial efficiency, the court addresses

the Motions together here.

**A.     Sexual Harassment**

DCSC opposes Brown's harassment claim on the grounds that it is barred by the

statue of limitations.  Indeed, 42 U.S.C.A. § 2000e-5(e) requires that such charges be filed

---

[1] The Amended Complaint also initially included Counts (XI) Negligence and (XII) Violation of Substantive Due Process Under the Fourth and/or Fourteenth Amendment.  Counts XI and XII were against Indiana Testing, Inc., and they have been dismissed.  (*See* Docket #131).

[2] The court notes that Brown's Response brief is largely irrelevant.  (*See* Docket #138). It appears that Brown, who is proceeding pro se at this point, cut and pasted text from a brief that was originally submitted in the case of *Otha Taylor v. Jack L. Cottey*, 1:02-cv-01008 DFH/TAB (S.D.Ind. 2002).  As such, much of her Response discusses people and events not at issue here. However, pages 2-7 of her Response do address the case at bar; the court limits its consideration of Brown's Response to those pages.

within three hundred days after the alleged unlawful employment practice.  In her deposition, Brown testified that she cut off communication with Anderson after January 2002. (Brown Dep. at 99-100, 137).  She resigned in May 2002 and filed her EEOC Charge on February 7, 2003.  (Ex. 1).

In her Response, Brown does refer to several alleged inappropriate comments made by Anderson in February and April 2002.  (Response ¶¶ 5-7).  However, those allegations do not include citations to, nor do they have evidentiary support in, the record. "[I]f the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court *must* enter summary judgment against her."  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted); *see also* S.D.Ind. L.R.56.1(b) (stated facts "shall be supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence").  Because Brown's EEOC charge was filed over a year after the last of her interactions with Anderson, her sexual harassment claim against DCSC is untimely, and summary judgment of the claim will be granted in DCSC's favor.

**B.     Retaliation**

Brown has not submitted any direct evidence of retaliation, so the indirect, burden-shifting *McDonnell Douglas* test applies to her retaliation claim.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  In order to establish her prima facie case of retaliation, Brown must show that (1) she engaged in a statutorily protected activity; (2) she was subjected to an adverse employment action; (3) she was performing her job in a

6

satisfactory manner; and (4) she was treated less favorably than any other similarly situated employee who did not engage in such protected activity. *McDonnell Douglas*, 411 U.S. at 802-03; *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Brown cannot satisfy any of these elements.

Brown did not complain of any harassment until after she was terminated, so she did not engage in a statutorily protected activity while she was employed. Brown resigned, so she was not subject to an adverse employment action. *See Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) (constructive discharge is not an adverse employment action in the absence of an official act). She was involved in a serious accident that injured others while driving her bus, so she cannot argue that she was performing in a satisfactory manner. And finally, Brown has not identified any similarly situated employees. She claims that male drivers were allowed to enter DCSC's drug rehabilitation program, but she does not allege that those male drivers were involved in drug related and/or on-the-job accidents. *See Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2001).

Because Brown cannot meet her prima facie burden under *McDonnell Douglas*, her retaliation claims against DCSC and Anderson fail.

## C.    **Sexual Discrimination**

In her sex discrimination claim, Brown again suggests that DCSC allowed similarly situated male drivers to enter of DCSC's employee drug rehabilitation program. As discussed above, Brown's unsupported allegations cannot sustain a finding that she

was similarly situated to such men.

**D.      Constructive Discharge**

In response to Brown's constructive discharge claim, DCSC is entitled to the affirmative defense articulated in *Ellerth* and *Faragher*; that is, a reasonable employee would have taken "advantage of preventive or corrective opportunities provided by the employer . . . ." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998). Specifically, the Seventh Circuit has held that the logic of *Ellerth* and *Faragher* applies to constructive discharge, in that "a constructive discharge claim requires evidence that quitting was the only way the plaintiff could extricate herself from the intolerable conditions." *Gawley v. Indiana University*, 276 F.3d 301, 315 (7th Cir. 2001). Because Brown did not alert anyone at DCSC to Anderson's alleged harassment, DCSC cannot be liable for constructive discharge. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004) ("Absent an official act . . . the employer ordinarily would have no particular reason to suspect that a resignation is not the typical kind daily occurring in the work force.").

**E.      Section 1983**

Brown's § 1983 claims fail for the same reasons as her Title VII claims. Brown has failed to come forth with any evidence of discrimination. *See Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003) ("Our cases make clear that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection.").

**F.      Violation of Procedural Due Process Under the Fourteenth Amendment**

Brown chose to resign in lieu of taking advantage of the administrative procedures available to her.  Her due process rights were not violated.  *Hudson v. Chicago*; 374 F.3d 554, 563 (7th Cir. 2004); *Cliff v. Board of Sch. Commissioners*, 42 F.3d 403, 414 (7th Cir. 1994) ("[T]he Due Process Clause does not require that a pre-termination hearing be conducted in every case.  Instead, the right to such a hearing generally is waived when an employer offers a pre-termination hearing and the employee fails to accept.").

**G.      Violation of Substantive Due Process Under the Fourth and/or Fourteenth Amendment**

Brown argues that Anderson's statement to coworkers that she had a "dirty" drug test is stigmatizing, such that it deprives her of a liberty interest.  There is no evidence that Brown "suffered a tangible loss of other employment opportunities as a result" of Anderson's disclosure.  *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625 (7th Cir. 1986). Without such stigmatization, her liberty interest claim fails.  *Hedrich v. Board of Regents*, 274 F.3d 1174 (7th Cir. 2001).

Brown's Fourth Amendment claim also fails.  DCSC had the reasonable authority to drug test her, and she consented to the test.  (Ex. 3 at 21-23 (Docket #107)).

**H.      State Constitutional Invasion of Privacy**

Brown failed to file a tort claims notice with DCSC.  (Brown Dep. at 179).  Her remaining claims against DCSC are inadequate on that ground alone; however, they are also flawed on the merits.  Ind. Code § 34-13-3-5.

9

Brown's claim for invasion of privacy fails because the Indiana Supreme Court has not recognized the tort of invasion of privacy based on public disclosure of private facts. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 693 (Ind. 1997); *Felsher v. University of Evansville*, 755 N.E.2d 589, 593 (Ind. 2001). None of the other types of invasion of privacy – intrusion upon seclusion, appropriation of likeness, or false-light publicity – are applicable in this case. *See* Restatement (Second) of Torts § 652A (1977).

## I.      Negligent Infliction of Emotional Distress

Brown's claim for negligent infliction of emotional distress is unsuccessful against DCSC because she has not established any underlying negligence on the part of DCSC. A claim for negligent infliction of emotional distress cannot survive without some underlying negligence. *See, e.g.*, *Alexander v. Scheid*, 726 N.E.2d 272 (Ind. 2000) (underlying negligence of misread x-ray).

Her claim against Anderson likewise fails. Brown's claims for emotional distress involve Anderson's instructions to Indiana Testing, Inc. regarding Brown's drug test and her subsequent resignation. Indiana Code § 34-13-3-5 states that when a public employee is sued for conduct within the scope of his employment, personal claims against the employee are barred. *See Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2004). The conduct Brown complains of in her emotional distress claims is conduct within the scope of Anderson's employment; she has not argued otherwise.

**J.**     **Intentional Infliction of Emotional Distress**

In Indiana, the elements of intentional infliction of emotional distress are that a

person: (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly

(3) causes (4) severe emotional distress to another.  *Bradley v. Hall*, 720 N.E.2d 747, 725

(Ind. Ct. App. 1999).  Brown has not alleged that DCSC did anything extreme or

outrageous, so her claim against DCSC fails.  Likewise, her claim against Anderson,

relating to his actions surrounding the drug test, do not amount to extreme or outrageous

conduct.  *Branham v. Celadon Trucking Services, Inc.*, 744 N.E.2d 514, 523 (Ind. Ct.

App. 2001) ("[t]he requirements to prove this tort are 'rigorous'") (citations omitted).

**K.**     **Breach of Contract**

Finally, Brown alleges that DCSC breached its employment contract with her by

failing to follow DOT regulations regarding split tests.  Brown waived her right to have a

split sample taken at the time of the drug test.  (Brown Dep. at 118, 191).  Brown also

alleges that DCSC breached its contract by accepting Brown's resignation, but there is

nothing in the contract that prohibits such an acceptance.  (Ex. 3 at 24 (Docket #107)).


**IV.**     **Conclusion**

For the foregoing reasons, Danville Community School Corporation's Motion for

Summary Judgment (Docket #105) is **granted**.  Defendant Timothy Anderson's Motion

for Summary Judgment (Docket #93) is **granted**.

Dated:  March 15, 2006.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com

Kevin B. McCoy
LOCKE REYNOLDS LLP
kmccoy@locke.com

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Thomas E. Wheeler II
LOCKE REYNOLDS LLP
twheeler@locke.com

Amy Suzanne Wilson
LOCKE REYNOLDS LLP
awilson@locke.com

Heather L. Wilson
LOCKE REYNOLDS LLP
hwilson@locke.com

Copy to:

JENNIFER L. BROWN
1222 S. Glen Arm Road
Indianapolis, IN 46241